IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**June 2, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**ACNR RESOURCES, INC.,**
**Employer Below, Petitioner**

**v.) No. 25-ICA-372**          (JCN: 2024025513)

**JUSTIN FOLMSBEE,**
**Claimant Below, Respondent**

**and**

**JUSTIN FOLMSBEE,**
**Claimant Below, Petitioner**

**v.) No. 25-ICA-373**

**ACNR RESOURCES, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

In this consolidated cross-appeal the parties, ACNR Resources, Inc. ("ACNR") and Justin Folmsbee, appeal the August 21, 2025, order of the Workers' Compensation Board of Review ("Board").[1] Both parties timely filed a response. The issues on appeal are whether the Board erred in 1) reversing the claim administrator's November 7, 2024, order, which denied authorization for MRIs of the cervical spine, thoracic spine, and brachial plexus and an NCS/EMG study; and 2) affirming the claim administrator's January 10, 2025, order, which closed the claim for temporary total disability ("TTD") benefits.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

---

[1] ACNR is represented by Aimee M. Stern, Esq. Mr. Folmsbee is represented by Hunter B. Mullens, Esq., and C. Brian Matko, Esq.

Mr. Folmsbee was seen in the Ruby Memorial Hospital Emergency Department on August 9, 2024. The clinical impression was a head injury sustained on August 9, 2024. Mr. Folmsbee submitted an Employees' and Physicians' Report of Injury dated August 9, 2024, indicating that he is a coal miner and that he suffered a head injury and neck sprain on the same day when an object fell from a coal mine roof, hit his helmet, and left him unconscious. The physician's portion was completed by providers at Ruby Memorial Hospital on August 9, 2024, and indicates that Mr. Folmsbee suffered an occupational crush injury to the head and neck. A Monongalia EMS report dated August 9, 2024, indicates that upon arrival, it appeared Mr. Folmsbee had suffered a traumatic injury to his head and neck, but he was conscious and alert when he was transported to the surface. A brain CT scan was normal except for slight soft tissue scalp thickening/hematoma of the left temporal bone. A cervical spine CT did not show any evidence of an acute fracture or traumatic malalignment.

On August 10, 2024, Mr. Folmsbee was discharged; the discharge summary indicates a diagnosis of a concussion and indicates that Mr. Folmsbee could return to work on August 12, 2024. Mr. Folmsbee was seen by Erin Hawkins, CFNP, on August 13, 2024, for a follow-up regarding his concussion with loss of consciousness of 30 minutes or less. NP Hawkins signed a work excuse for Mr. Folmsbee stating that he would be reevaluated on August 19, 2024. On August 19, 2024, NP Hawkins assessed Mr. Folmsbee with a concussion that had significantly improved and he was released to return to work. Mr. Folmsbee followed up with NP Hawkins on August 28, 2024, and the assessment was post-concussive issues. Mr. Folmsbee was again advised not to return to work. The claim administrator issued an order dated August 29, 2024, holding the claim compensable for a neck contusion and a concussion, and Mr. Folmsbee was deemed eligible for TTD benefits from August 10, 2024, through August 19, 2024.

On September 5, 2024, Mr. Folmsbee was seen by Michael Ebbert, D.O., who assessed Mr. Folmsbee with a concussion, unknown loss of consciousness, and cervical pain. In a September 12, 2024, medical report, NP Hawkins noted that Mr. Folmsbee presented complaining about his concussion with worsening nausea. The assessment was concussion, nausea, gait disturbance, headache, and dizziness. On September 17, 2024, Dr. Ebbert noted that CT scans of Mr. Folmsbee's brain performed on August 5 and 21, 2024, were negative except for a small scalp hematoma of the left temporal bone without an underlying acute osseous abnormality and no acute intracranial abnormality; that a CT of the cervical spine on August 21, 2024, was negative for any acute fracture or traumatic malalignment; and that a September 12, 2024, MRI of the brain did not show any intracranial abnormality. Dr. Ebbert assessed a concussion with unknown loss of consciousness, cervical strain, dizziness, posttraumatic headaches, and migraines.

A note from Pinti Physical Therapy & Sports Medicine dated October 2, 2024, states that Mr. Folmsbee had experienced a reduction in his headache symptoms over the prior

couple of days and tolerated his last treatment session well. He did report some occasional weakness in his legs. A note dated October 7, 2024, indicates that Mr. Folmsbee had some numbness down his left arm and that his left leg had been going out on him.

Gerald Steiman, M.D., a neurologist, evaluated Mr. Folmsbee on October 13, 2024. Dr. Steiman opined that, based on Mr. Folmsbee's medical history and physical examination, he had fully and completely recovered from his concussion and neck contusion. Dr. Steiman noted that the general recovery period for a single, isolated concussion can be up to three months, Dr. Steiman advised Mr. Folmsbee that he should be able to return to his prior job activity without restriction or limitation on December 1, 2024. Dr. Steiman further noted that Mr. Folmsbee reported a weak and achy sensation in his legs over the past few weeks, as if his legs wanted to buckle, and he also reported a sensation that his left arm was falling asleep.

On October 14, 2024, NP Hawkins stated that Mr. Folmsbee should be off work for another month unless neurology approves an earlier release date. On October 15, 2024, Dr. Ebbert stated that Mr. Folmsbee reported leg fatigue since the accident. Dr. Ebbert noted that Mr. Folmsbee's primary care doctor requested a cervical spine MRI, a left brachial plexus MRI, a thoracic spine MRI, and an NCS/EMG because of his numbness. Dr. Ebbert further noted that Mr. Folmsbee reported improvement in his initial symptoms but now experienced left arm paresthesia and giving way in his legs. Dr. Ebbert opined that Mr. Folmsbee was experiencing a plausible mechanism of injury with acute signs and symptoms that correlate with the time of injury, while the head imaging is negative for an intercranial process. Dr. Ebbert stated that, based on his examination of Mr. Folmsbee, there was numbness of the anterior and posterior aspect of the arm up to the C7-T4 level of his spine and that it was expected he would have symptoms higher up on his neck because the distribution should involve more of the brachial plexus.

By order dated November 7, 2024, the claim administrator denied Dr. Ebbert's authorization request for an MRI of the cervical spine, left brachial plexus, and thoracic spine, and an NCS/EMG. The claim administrator based its denial on Dr. Steiman's report dated October 13, 2024. Mr. Folmsbee protested this order.

A note from Pinti Physical Therapy & Sports Medicine dated November 7, 2024, indicates that Mr. Folmsbee reported that his headaches had subsided for a couple of weeks, that his primary complaint is numbness in his left upper extremity and intermittent episodes of his legs giving out when on his feet for extended periods of time, and that he had tolerated physical therapy. On November 14, 2024, NP Hawkins noted that Mr. Folmsbee's chief complaints were concussion and anxiety. Mr. Folmsbee reported that he still had left arm and leg weakness, that he cannot feel his left side, that his arm gets very painful if he does not shake it out, and that he falls if he does not pay attention. Mr. Folmsbee had reduced sensation in his left leg. NP Hawkins opined that Mr. Folmsbee was temporarily

disabled until his symptoms improved. NP Hawkins requested that Mr. Folmsbee be excused from work until January 22, 2025. On November 15, 2024, treatment providers at Pinti Physical Therapy & Sports Medicine indicated that Mr. Folmsbee continued to have intermittent weakness and loss of function of his legs and diminished strength and function of his right upper extremity.

By the claim administrator's order dated December 2, 2024, the claim administrator suspended TTD benefits based on a report dated October 13, 2024, in which Dr. Steiman released Mr. Folmsbee to return to work on December 1, 2024. Mr. Folmsbee protested this order.

On December 28, 2024, Mr. Folmsbee underwent an MRI of the left brachial plexus that was unremarkable. An MRI of the thoracic spine did not show any acute abnormality. An MRI of the cervical spine revealed moderate to severe left neuroforaminal narrowing at C4-C5 and C5-C6 caused by left-sided uncovertebral spurring. In correspondence dated January 3, 2025, Dr. Ebbert stated that upon review of the MRI studies, the upper cervical and thoracic middle spine looked good, but there is an area on the left of his cervical spine that may be a pinched nerve, which could explain some of the left arm symptoms.

An EMG performed at WVU Medicine on January 8, 2025, revealed evidence of a chronic left cervical radiculopathy localized at the C7 level. In correspondence dated January 8, 2025, Dr. Ebbert notes that Mr. Folmsbee's nerve study showed a pinched nerve in the neck, and he recommended that Mr. Folmsbee be seen in the spine clinic. On January 15, 2025, Mr. Folmsbee was seen at the WVU Medicine Physiatry & Spine Center. The report states a clinical impression of cervical radiculopathy and persistent pain in the left upper extremity. On January 20, 2025, Dr. Ebbert saw Mr. Folmsbee and assessed him with cervical radiculopathy, posttraumatic headaches, numbness, and a concussion with unknown loss of consciousness. In visit notes dated January 21, 2025, NP Hawkins listed the diagnoses of concussion, anxiety, and cervical radiculopathy. Mr. Folmsbee was excused from work until April 2, 2025.

In correspondence dated January 21, 2025, Dr. Ebbert reported that at the time of injury, he believed Mr. Folmsbee sustained a mild traumatic brain injury ("TBI"), which would typically resolve in two to four weeks. However, Dr. Ebbert noted that his symptoms have persisted for upwards of three months. Dr. Ebbert opined that Mr. Folmsbee also had an injury to the cervical spine along with a mild TBI. Dr. Ebbert further noted that Mr. Folmsbee began experiencing left arm paresthesia and weakness after his work injury; and he opined that, given Mr. Folmsbee's ongoing left arm symptoms and objective evidence of sensory changes in his left arm, a cervical spine MRI and a nerve conduction study were necessary for further evaluation. Dr. Ebbert stated that these studies have subsequently shown a pinched nerve on the left side of the neck and positive findings on the cervical

MRI and nerve conduction study, thus Mr. Folmsbee was referred to the spine clinic for further evaluation.

On January 20, 2025, Dr. Ebbert saw Mr. Folmsbee, noted that he was still experiencing symptoms, and opined that he should remain off work. In a letter to Mr. Folmsbee's counsel dated January 30, 2025, NP Hawkins noted that she saw Mr. Folmsbee on August 13, 2024; that he continued to have symptoms related to his work injury of August 9, 2024; that Mr. Folmsbee had continued to follow up with Dr. Ebbert; and that as described in multiple progress notes, Mr. Folmsbee's symptoms have progressed to weakness in his left arm and both legs due to moderate to severe left neuroforaminal narrowing at C5-C6 as shown on the cervical MRI of December 28, 2024, which he did not report prior to his work injury.

Mr. Folmsbee saw Corinne Layne-Stuart, D.O., on February 5, 2025, at WVU Pain Management. Dr. Layne-Stuart noted that Mr. Folmsbee reported pain that radiates into the left arm and all fingers, with the worst pain being in the extremities. Mr. Folmsbee further reported intermittent weakness in the legs, numbness, and tingling that was constant and worse with activity. He noted that his symptoms improved with gabapentin, Tylenol, and Ibuprofen. The assessment was foraminal stenosis of the cervical region, cervical radiculopathy, a neck strain, and cervical degenerative disc disease. Dr. Layne-Stuart recommended interlaminar epidural injections of the cervical and thoracic spine and cervical epidural steroid injections.

Mr. Folmsbee followed up with Dr. Ebbert on March 4, 2025, and reported his symptoms had worsened. Mr. Folmsbee indicated that he has ongoing left-hand weakness and that he continued to have an "electric sensation," which causes him to shake his arm for relief. He further stated that he feels pain in the center of his neck and in his shoulder and that his left leg is weak and tires easily, which requires him to take breaks. The assessment was a neck strain, chronic post-traumatic headaches, and cervical radiculopathy.

On March 17, 2025, Mr. Folmsbee received an interlaminar cervical epidural steroid injection at C7-T1 for cervical radiculopathy and foraminal stenosis of the cervical spine. On March 31, 2025, Emily Bankhead, APRN, reported that Mr. Folmsbee did not have any relief from the March 17, 2025, injection. APRN Bankhead further indicated that Mr. Folmsbee was to continue gabapentin and follow up with Physiatry and Neurology as scheduled; and it was recommended that he be referred to the Spine Center for further evaluation due to failed conservative treatment. On April 2, 2025, Mr. Folmsbee was seen by NP Hawkins and reported intermittent headaches, continued left cervical radiculopathy despite steroid injections, and left arm paresthesia. Mr. Folmsbee underwent x-rays of his cervical spine on April 8, 2025, revealing unremarkable changes of the cervical spine with no evidence of instability.

Mr. Folmsbee was seen by Kayla Maga, PA-C, on April 9, 2025, for follow up of neck pain. Mr. Folmsbee reported that he had no relief from the cervical injection by Dr. Layne-Stuart, and that he had side neck pain that radiated to the left upper extremity, with associated paresthesia. Mr. Folmsbee reported that his left grip strength was tested during his physical therapy, and it showed a 60-pound difference between his right and left hands. Mr. Folmsbee also reported low back pain and reduced strength in the lower extremities. PA Maga assessed Mr. Folmsbee with cervical radiculopathy, neck pain, myofascial neck pain, and low back pain.

On April 10, 2025, Mr. Folmsbee was seen by Cara Sedney, M.D., a neurosurgeon, who noted that he had left neck pain that radiated into the left arm with numbness, which increased with activity, and that Mr. Folmsbee's left C5-C6 herniation was symptomatic and consistent with an axial load injury. Dr. Sedney indicated that she discussed the left C5-C6 herniation with Mr. Folmsbee and the possibility of doing a nerve root block. Mr. Folmsbee was to return to the clinic in six weeks when surgery would be considered if there was no long-term relief. On April 14, 2025, NP Hawkins excused Mr. Folmsbee from work until May 30, 2025. In office notes dated April 15, 2025, Dr. Ebbert reported that Mr. Folmsbee feels that the gabapentin has helped; that the steroid injection did not help; that Dr. Sedney recommended a nerve block at the left C5-C6 with potential surgery if the nerve block fails; and that Mr. Folmsbee wanted to hold off on physical therapy due to his pain. Dr. Ebbert's assessment was cervical strain and posttraumatic headaches.

On April 30, 2025, Mr. Folmsbee underwent a fluoroscopically guided left cervical nerve root block at C5-C6 by Dr. Sedney. The initial therapeutic response was rated as "no relief" and Mr. Folmsbee reported increased pain following the procedure. On May 22, 2025, Dr. Sedney reported that the C5-C6 cervical nerve root block improved Mr. Folmsbee's symptoms by about 30%, and that with only 30% relief, Mr. Folmsbee may not be satisfied with surgery. In correspondence dated June 4, 2025, NP Hawkins states that Mr. Folmsbee was excused from work from May 30, 2025, to June 24, 2025.

By order dated August 21, 2025, the Board reversed the claim administrator's November 7, 2024, order, which denied authorization for MRIs of the cervical spine, thoracic spine, and brachial plexus; and an NCS/EMG study. In the same order, the Board affirmed the claim administrator's January 10, 2025, order, which closed the claim for TTD benefits. The Board found the requested treatment was medically related and reasonably necessary treatment for the compensable injury. The Board further found that Mr. Folmsbee was placed at MMI for the compensable conditions. Both parties now appeal the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

6

The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:

(1) In violation of statutory provisions;
(2) In excess of the statutory authority or jurisdiction of the Board of Review;
(3) Made upon unlawful procedures;
(4) Affected by other error of law;
(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

## I. Additional Treatment/Diagnostic Testing

On the issue of additional treatment, ACNR argues that neither the thoracic spine nor the brachial plexus have compensable diagnoses in this claim and therefore, the Board was clearly wrong to authorize MRIs of the thoracic spine and brachial plexus. ACNR further argues that the compensable cervical condition is a contusion, which should have resolved in the two months between the date of injury and the request for authorization for a cervical spine MRI and NCS/EMG. Finally, ACNR argues that Mr. Folmsbee's medical records indicate that his ongoing complaints are the result of his preexisting cervical spine degenerative disease.

The claim administrator must provide a claimant with medically related and reasonably necessary treatment for a compensable injury. *See* West Virginia Code § 23-4-3 (2005) and West Virginia Code of State Rules § 85-20 (2006).

On this issue, the Board noted that Mr. Folmsbee has ongoing symptoms of left arm numbness and weakness, which were confirmed by Drs. Ebbert and Steiman. The Board further noted that the requested treatments are diagnostic tests that are being requested to further assess Mr. Folmsbee's ongoing symptoms that began following the compensable injury. The Board found that there is no evidence contradicting Dr. Ebbert's attribution of these symptoms to the compensable injury. Thus, the Board reversed the claim administrator's order and authorized the requested treatment.

7

Upon review, we conclude that the Board was not clearly wrong to authorize MRIs of the cervical spine, thoracic spine, and brachial plexus, and an NCS/EMG study. The appendix record shows that Mr. Folmsbee had ongoing symptoms. Further, we note that West Virginia Code § 23-4-3 indicates that treatment should be authorized for a compensable injury, and it is reasonable to authorize diagnostic testing to determine whether Mr. Folmsbee's symptoms are related to his workplace accident.

## II. TTD Benefits

As to the issue of the closure of the claim for TTD benefits, Mr. Folmsbee argues that the Board failed to conduct the proper analysis. Further, Mr. Folmsbee argues that the medical evidence establishes that his ongoing symptoms are related to the compensable injury, and that Dr. Steiman did not find him at MMI at the time of evaluation.

Pursuant to West Virginia Code § 23-4-7a(e) (2005), entitlement to TTD benefits ceases when a claimant reaches MMI, is released to return to work, or returns to work, whichever occurs first.

On this issue, the Board found that, for the compensable diagnoses of neck contusion and concussion, Mr. Folmsbee has been placed at MMI by Dr. Steiman. The Board did not identify any evidence contradicting a finding of MMI for the only compensable diagnoses in the claim. Thus, the Board affirmed the claim administrator's order closing the claim for TTD benefits. The Board noted that Mr. Folmsbee was not precluded from requesting additional TTD benefits if additional diagnoses are later added to the claim.

Upon review, we conclude that the Board was not clearly wrong in affirming the claim administrator's closure of the claim for TTD, since it is unrefuted that Mr. Folmsbee is at MMI for the compensable diagnoses in the claim. Thus, we conclude that the Board was not clearly wrong in finding that Mr. Folmsbee is no longer entitled to TTD benefits for the current compensable conditions.

As the Supreme Court of Appeals of West Virginia has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in reversing the claim administrator's November 7, 2024, order denying authorization for MRIs of the cervical spine, thoracic spine, and brachial plexus and an NCS/EMG study. We further cannot conclude that the Board was clearly wrong in affirming the claim administrator's January 10, 2025, order closing the claim for TTD benefits.

Accordingly, we affirm the Board's August 21, 2025, order.

Affirmed.

**ISSUED:** June 2, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White